**[J-43A&B-2013][M.O. – Per Curiam]**

**IN THE SUPREME COURT OF PENNSYLVANIA
EASTERN DISTRICT**

| | | |
|---|---|---|
| MICHELLE BRAUN, ON BEHALF OF HERSELF AND ALL OTHERS SIMILARLY SITUATED, | : | No. 32 EAP 2012 |
| | : | |
| | : | Appeal from the Judgment of Superior |
| | : | Court, entered on June 10, 2011, at No. |
| Appellee | : | 3373 EDA 2007, affirming in part and |
| | : | reversing in part the Judgment of the |
| | : | Court of Common Pleas of Philadelphia |
| v. | : | County, Civil Division, entered |
| | : | November 14, 2007 at No. 3127, March |
| | : | Term 2002 |
| | : | |
| WAL-MART STORES, INC., A | : | |
| DELAWARE CORPORATION, AND | : | |
| SAM'S CLUB, AN OPERATING | : | |
| SEGMENT OF WAL-MART STORES, | : | |
| INC., | : | |
| | : | |
| Appellants | : | ARGUED: May 8, 2013 |

| | | |
|---|---|---|
| DOLORES HUMMEL, ON BEHALF OF HERSELF AND ALL OTHERS SIMILARLY SITUATED, | : | No. 33 EAP 2012 |
| | : | |
| | : | Appeal from the Judgment of Superior |
| | : | Court, entered on June 10, 2011, at No. |
| Appellees | : | 3376 EDA 2007, affirming in part and |
| | : | reversing in part the Judgment of the |
| | : | Court of Common Pleas of Philadelphia |
| v. | : | County, Civil Division, entered |
| | : | November 14, 2007 at No. 3757, |
| | : | August Term 2004 |
| | : | |
| WAL-MART STORES, INC., A | : | |
| DELAWARE CORPORATION, AND | : | |
| SAM'S CLUB, AN OPERATING | : | |
| SEGMENT OF WAL-MART STORES, | : | |
| INC., | : | |
| | : | |
| Appellants | : | ARGUED: May 8, 2013 |

## DISSENTING OPINION

**MR. JUSTICE SAYLOR**                    **DECIDED:  December 15, 2014**

I agree with Appellants that the trial court implemented, and the intermediate court approved, a severely lax approach to the application of governing substantive law in the issuance and sustainment of an almost two-hundred-million-dollar verdict based on proof which was insufficient to establish liability and damages across a 187,000-member class.  Although I take no issue with the majority's observation that the burden of proof may be relaxed to some degree in wage-and-hour cases, see Majority Opinion, slip op. at 17, the latitude extended in this case is of an untenable magnitude.  Here, the Appellee class was permitted to effectively project the anecdotal experience of each of six testifying class members upon thirty-thousand other members of the class at large, to extrapolate abstract data concerning missed and mistimed "swipes" from 16 Pennsylvania stores to 139 others, to overlay discrete data taken from several years' experience across a distinct four-year period, and to attribute a single cause to missed and mistimed swipes, all despite indisputable variations across store locations, management personnel, time, and other circumstances.[1]  The sorts of gross generalizations and assumptions which permitted the simple averaging and extrapolations offered up by Appellees' expert witnesses to stand in support of the conclusion that some tens of millions of missed or mistimed swipes reflected rest breaks foregone on account of payroll pressure exerted from the Wal-Mart boardroom would

---

[1] For example, presumably as a result of Wal-Mart compliance initiatives, the numbers of missed swipes for meal breaks dropped dramatically over the years.  See N.T., Sept. 19, 2006 (afternoon), at 61-62.  Nevertheless, in extrapolating rest-break data taken from 1998 through 2001 into the 2002 through 2006 timeframe, Appellees' expert witness took the liberty of assuming that none of Wal-Mart's compliance measures were of any effect whatsoever relative to the rest breaks.  See id. at 67.

never hold up to peer review as a matter of science. Therefore, it is very troublesome for the same to be relied upon in courts of law as the essential support for a large scale class-action verdict.

Certainly, I am sympathetic to efforts to vindicate the interests of workers with modest claims who may lack the ability and incentive to pursue remedies on an individualized basis. Nevertheless, I remain of the view that the kinds of alterations to substantive law reflected in the majority's relaxed approach to class-action litigation should be the subject of overt consideration in the political branch and should not occur as a byproduct of the application of a mere procedural device by the judiciary. Accord Samuel-Bassett v. Kia Motors Am., Inc., 613 Pa. 371, 466-77, 34 A.3d 1, 58-65 (2011) (Saylor, J., dissenting).[2] I maintain this position, in particular, in light of the broad-scale social effects likely to attend these sorts of modifications. In this regard, and more generally, I also incorporate by reference the remarks set forth in my dissent in the Kia case. See id.

---

[2] The ability of the General Assembly to alter the class action landscape via legislation is, of course, subject to constitutional limitations such as the due process constraints raised by Appellants.